**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| EDGAR JAMAL GAMORY, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:08-CR-0153-TWT-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:12-CV-4203-TWT-RGV |

**ORDER FOR SERVICE OF ORDER AND**
**FINAL REPORT AND RECOMMENDATION**

Attached is the Order and Final Report and Recommendation of the United

States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and this

Court's Local Rule 72.1.  Let the same be filed and a copy, with a copy of this order,

be served upon counsel for the parties, or if a party is not represented, then directly

upon said party.

Each party may file written objections, if any, to the report and recommendation

within fourteen (14) days of receipt of this order.  28 U.S.C. § 636(b)(1).  Should

objections be filed, they shall specify with particularity the alleged error(s) made

(including reference by page number to the transcript if applicable) and shall be served

upon the opposing party.  The party filing objections will be responsible for obtaining

and filing the transcript of any evidentiary hearing for review by the district court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093 (11th Cir. 1983) (per curiam).

The Clerk is **DIRECTED** to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED** this 15th day of July, 2013.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| EDGAR JAMAL GAMORY, | :: | MOTION TO VACATE |
|     Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
|     v. | :: | CRIMINAL NO. |
| | :: | 1:08-CR-0153-TWT-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
|     Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:12-CV-4203-TWT-RGV |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter is currently before the Court on movant Edgar Jamal Gamory's

("Gamory") pro se "Motion (1) to Expand the Record under Rule 7 Governing § 2255;

(2) to Vacate, Set Aside, or Correct Conviction & Sentence under 28 U.S.C. § 2255;

(3) for a New Trial Based on Newly Discovered Evidence under Fed. R. Crim. P.

33(a); (4) to Compel Brady[1] and Giglio[2] Discovery under Rule 6 Governing § 2255;

(5) for an Evidentiary Hearing under Rule 8 Governing § 2255; and (6) for a

Certificate of Appealability under 28 U.S.C. § 2253(c)(1) and/or a Declaration that §

2253(c)(1) is Unconstitutional as Applied to Defendant Raising Claims of Ineffective

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] Giglio v. United States, 405 U.S. 150 (1972).

Assistance of Counsel." [Doc. 320].[3]   The government has filed a response, [Doc. 328], and Gamory has filed a counseled reply, [Doc. 330].  The government, however, does not oppose Gamory's request to expand the record.[4]  [See generally Doc. 328]. Accordingly, Gamory's motion to expand the record is **GRANTED**.   For the following reasons, the undersigned **RECOMMENDS** that Gamory's remaining motions be **DENIED**.

## I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a superceding indictment charging Gamory and three co-defendants in Count One with conspiracy to distribute and possess with the intent to distribute at least 5 kilograms of cocaine and at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii) and (vii).  [Doc. 34 at 1-2].  The federal grand jury also charged Gamory in Counts Two through Five with aiding and abetting in four separate money laundering transactions, in violation of 18 U.S.C. §§ 1957 and 2.  [Id. at 2-4].  Gamory

---

[3] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[4] Specifically, Gamory seeks to expand the record to include documents from other federal criminal proceedings and two affidavits.  [Doc. 320-1 at 16-17].

2

pleaded not guilty, [Doc. 50], and proceeded to a seven-day jury trial represented by R. Martin Adams ("Adams") and James Parkman, [Docs. 168-74, 247-53]. The jury found Gamory guilty of Counts One through Three and acquitted him of Counts Four and Five. [Docs. 175, 176]. The Court imposed a total sentence of life imprisonment. [Doc. 235].

Still represented by Adams, Gamory appealed, arguing that: (1) the district court abused its discretion by denying his request for an evidentiary hearing on his motion to suppress; (2) the district court also abused its discretion by admitting a rap video into evidence over Gamory's objection and without a limiting instruction; (3) the government used peremptory challenges to exclude black jurors, including prospective juror 29, from the petit jury, in violation of Batson v. Kentucky, 476 U.S. 79 (1986); (4) 21 U.S.C. § 846 violates the Commerce Clause; (5) the district court abused its discretion by admitting Gamory's tax records, as well as those of his family; (6) the district court constructively amended the indictment by broadening the basis for a conviction in its instructions to the jury; (7) the district court erred in denying Gamory's motion for acquittal on Counts Two and Three; (8) the district court abused its discretion by denying Gamory's motion for a new trial; (9) the cumulative effect of these errors requires reversal; (10) Gamory's life sentence violated Apprendi v. New

3

Jersey, 530 U.S. 466 (2000); and (11) the district court erred by using a special verdict

sheet regarding drug quantity.  Br. of Appellant, United States v. Gamory, No. 09-

13929, 2010 WL 5146027, at *12-62 (11th Cir. Feb. 4, 2010).  On March 11, 2011, the

United States Court of Appeals for the Eleventh Circuit affirmed Gamory's convictions

and total sentence.  United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011).  The

Eleventh Circuit recounted the evidence presented to the jury as follows:

> . . . [I]n late or early 2005, [a Mexican drug trafficker, Enrique] Juangorena [("Juangorena")] began supplying cocaine to Gamory, who operated in Georgia, North and South Carolina, Virginia, and New York. Juangorena first met Gamory at Gamory's residence, where Juangorena and the [confidential informant ("CI")] went to pick up $750,000 or $800,000 in drug proceeds from the sale of cocaine.
>
> In addition to translating conversations between Gamory and Juangorena, the CI delivered cocaine from Juangorena to Gamory and in turn counted and transported drug proceeds from Gamory's residence. The CI testified that Gamory received more than 2,000 kilograms of cocaine.  Also during this period, the CI picked up drug proceeds in amounts of $300,000, $600,000, and $800,000 generated from the sale of cocaine.
>
> Gamory employed childhood friends, including Errol Moliere [("Moliere")] and Durrell Holland [("Holland")] (both of whom testified against him at trial), to sell drugs and collect drug proceeds for him. Moliere sold cocaine for Gamory in Raleigh and Greensboro, North Carolina, and Alexandria, Virginia, between 1998 and 2006.  Similarly, Holland sold cocaine for Gamory in Greensboro; Charleston, South Carolina; and Norfolk, Hampton, Newport News and Virginia Beach, Virginia between 2000 and 2007.  Between 2005 and 2007, Holland sold

4

between 18 to 20 kilograms of cocaine every four to five days while in Virginia.  Holland received the cocaine from couriers who worked for Gamory and drove a Ford Explorer belonging to Gamory, which had a secret compartment in it to transport drugs and drug proceeds between Atlanta and Virginia.

In January 2006, Moliere moved to Atlanta and lived in Gamory's basement for two or three months while working with Gamory in the music recording business at Gamory's studio, Hush Money Entertainment ("HME").  According to Moliere and Holland, HME was a hobby that never got off the ground, and Gamory never made any money from it. Gamory also owned seafood restaurants in New York, but was not the registered owner.  Rather, the restaurants were registered in the name of Steve Workman [("Workman")], another childhood friend who worked with Gamory in the drug business.  According to Holland, Workman just "legalized" the fish restaurants for Gamory.

In May 2007, as directed by agents, the CI contacted Gamory and made arrangements for Gamory, Juangorena, and the CI to meet at HME on May 24, 2007, for a controlled drug buy.  In anticipation of the meeting, surveillance was set up at Gamory's residence and recording studio that day.  DEA agents observed two people leave the residence in different cars, including a green Ford Explorer, which agents suspected had a hidden compartment based upon information received from the CI. Agents followed the Explorer to a location where it was parked in a garage at Providence Apartments in Lithonia, Georgia ("the apartment" and "apartment garage," respectively).  [Co-defendant] Vaughn Greene [("Greene")] was identified as the driver of the Explorer at the scene. Agents also identified another cooperator, Errol Moliere, who was observed meeting with Greene at the apartment complex after Greene had parked the Explorer in the apartment garage.

Agents obtained consent to search the apartment garage from Greene's girlfriend, Lakisha Parker.  During a search of the Explorer, agents seized $630,000 from a hidden compartment.  Moliere later

5

identified the Explorer that Greene was driving that day as belonging to Gamory and having been used in the past to deliver cocaine to, and pick up drug proceeds from, Moliere in Virginia or North Carolina.  At trial, Holland and Moliere both identified some of the bundles of money, which were labeled with the letter "D," as drug proceeds Holland had collected and Moliere and Greene packaged at Holland's residence in Virginia for Gamory.

[Special] Agent Larsen [("Agent Larsen")] of the Atlanta Field Office of the Drug Enforcement Agency] then obtained a search warrant for Gamory's residence at Riverwalk Trail, in Lilburn, Georgia ("Gamory's residence"), which was executed the next day, on May 25, 2007.  During the search, agents seized a large amount of cash, jewelry, five firearms, a Kevlar police vest, drug packaging materials, and papers which contained notations similar to those found in drug ledgers.  Agents also located a hidden compartment which had been built into the basement stairs by the CI and [co-defendant Victor] Olvera.

. . .

During the trial, the government presented the testimony of 19 witnesses, including: Agent Larson; the CI; Holland; Moliere; Juangorena; various surveillance agents who testified to the facts set out above; various car dealers regarding automobile purchases and state and federal tax officials regarding income tax records.  With the exception of HME and Gamory Enterprises, the evidence showed that all of Gamory's assets, including his residence, vehicles and restaurants, were titled in alias names used by Gamory or in the names of other people, primarily Gamory's family members.

Additionally, . . . the government introduced evidence that Gamory had paid no personal income or business taxes for HME and Gamory Enterprises during the years 2003–2006, and neither had he paid taxes for his restaurants during 2003–2007. . . .   There were also a number of witnesses who testified regarding the drug conspiracy and money.

6

> To prove the money laundering charges, the government relied on the testimony of the CI, Juangorena, Holland and Moliere and the existence (or lack thereof) of tax records for Gamory and his family to show that Gamory did not have a legitimate source of income. Based on this evidence, as well as testimony by Wardell Strickland about how the purchases were conducted, the government argued that the vehicles that Gamory bought for himself and his family were purchased with drug proceeds.

Id. at 485-88 (footnotes omitted). On December 5, 2011, the United States Supreme Court denied Gamory's petition for writ of certiorari. Gamory v. United States, 132 S. Ct. 826 (2011).

On December 3, 2012, Gamory timely filed the instant pro se motion, arguing that: (1) the government violated his constitutional rights under Brady and Giglio by failing to disclose promises made to Moliere and Holland and by submitting and failing to correct false testimony regarding those promises;[5] (2) the prosecutor committed misconduct by (a) violating Gamory's rights under Brady and Giglio and (b) noting during closing argument that Vaughn would not testify against Gamory; (3) the government struck prospective juror 29 in violation of Batson; (4) Gamory received ineffective assistance of counsel at trial and on appeal for failing to object to

---

[5] In Gamory's pro se supporting memorandum, he appears to raise a similar claim regarding Juangorena. [See Doc. 320-1 at 23, 28-29, 32, 34-36]. However, counsel clarified in Gamory's reply brief that "Defendant's references to Juangorena was not to imply that he may have received secret promises." [Doc. 330 at 3, n.1].

7

the violations described in grounds (1) through (3); and (5) the cumulative effect of the errors identified in this motion and the harmless error identified by the Eleventh Circuit on appeal warrants relief.  [Doc. 320-1 at 18-56].  Gamory further asserts that he is entitled to a new trial based on the newly discovered evidence regarding the Brady and Giglio violations.  [Id. at 56-60].  The government responds that Gamory's Brady / Giglio allegations are not material, that Gamory's prosecutorial misconduct allegations lack merit and are procedurally barred, that Gamory is not entitled to habeas relief on his Batson claim because it was raised and rejected on direct appeal, that Gamory's ineffective assistance of counsel claims lack merit, and that Gamory's cumulative error argument fails.  [Doc. 328 at 18-40].  The government further maintains that Gamory's motion for a new trial is both untimely and lacks merit.  [Id. at 45-46].  Gamory has filed a counseled reply, reasserting the merits of his claims. [Doc. 330 at 3-23].

## II.  DISCUSSION

A.    **General Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

8

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).  An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case.  See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).  Accordingly, **IT IS RECOMMENDED** that Gamory's motion for an evidentiary hearing be **DENIED**.  Additionally, because the undersigned's review of the instant motion indicates that the discovery Gamory seeks is "not necessary for the resolution of his grounds for relief," **IT IS FURTHER RECOMMENDED** that his request to order discovery be **DENIED**.  Stewart v. United States, No. 1:04-CR-75-TWT, 2009 WL 909547, at *15 (N.D. Ga. Apr. 2, 2009).

9

**B.**  **Ground One: Brady / Giglio**

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.  Under Brady,

> The nondisclosed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

> "Giglio error, a species of Brady error, occurs when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury.'"  To prevail on a Giglio claim, a petitioner must establish that "(1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material i.e., that there is 'any reasonable likelihood' that the false testimony 'could ... have affected the judgment.'"  This standard of materiality is equivalent to the . . . "harmless beyond a reasonable doubt" standard.  . . . Accordingly, the prosecution has a duty to disclose evidence of promises made to a witness in exchange for testimony.

Ford v. Hall, 546 F.3d 1326, 1331-32 (11th Cir. 2008) (first alteration in original) (citations omitted).  The Eleventh Circuit has held,

> The materiality prong is easier to establish with Giglio claims than with Brady claims.  For Giglio purposes, "the falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"

Brown v. Head, 272 F.3d 1308, 1317 (11th Cir. 2001) (citation omitted).

During Gamory's trial, Moliere testified that, in exchange for his cooperation, the government agreed to consider filing a motion to reduce his sentence and that he was cooperating in the hopes that he would receive some benefit, but that no one had promised him a specific sentence reduction or that such a motion would definitely be filed. [Doc. 249 at 84-85, 141, 148-49]. Holland also testified that he had agreed to cooperate with the government and hoped to receive a sentence reduction, but that the government had made him no specific promise. [Doc. 250 at 5-6, 109, 111]. Gamory now claims that the government secretly promised these witnesses sentence reductions in exchange for their testimony, allowed them to testify falsely that no such promises were made, and failed to correct their false testimony. [Doc. 320-1 at 18-19, 22-37].

Accepting Gamory's allegations as true, the Court finds that there is no reasonable likelihood that disclosure of the secret promises for sentence reductions would have affected the jury's verdict. Both Moliere and Holland admitted that they were hoping to receive sentence reductions in exchange for their testimony. [Doc. 249 at 84-85, 141, 148-49; Doc. 250 at 5-6, 109, 111]. Moliere also testified regarding his extensive criminal history, which included four prior felony offenses. [Doc. 249 at 89-91, 96-97, 105, 153-56]. During cross examination, Moliere admitted that he had lied

11

in the past and broke a promise to his mother that he would try to stay out of trouble, even after she moved to a different state to live with him and support him. [Id. at 154-55, 194]. Holland testified regarding his prior felonies, including drug offenses, and his heroin use. [Doc. 250 at 8-13, 18-19, 53-57, 62-70, 74-75, 77-78]. During cross examination, Holland admitted that he had lied in the past to benefit himself. [Id. at 63, 109]. The Court instructed the jury that "a witness who hopes to gain more favorable treatment  may have a reason to make a false statement because the witness wants to strike a good bargain with the Government." [Doc. 252 at 134]. The Court also cautioned the jury regarding the credibility of witnesses who have "been convicted of a felony offense" or have used addictive drugs. [Id. at 133-34]. Thus, the jury heard substantial impeachment evidence and had ample bases on which to doubt the credibility of Moliere and Holland, if it chose to do so.

Additionally, Moliere and Holland's testimony "was corroborated by surveillance and seizures of substantial amounts of cash and drug ledgers." Gamory, 635 F.3d at 494. The "overwhelming evidence" of Gamory's guilt also included 17 other witnesses and tax records. Id. at 487-88, 494. Accordingly, while Moliere and Holland's testimony added weight to the prosecution's case and could be considered important, Gamory is not entitled to relief on his Brady / Giglio claim because he has

12

not shown that disclosure of the alleged secret promises likely would have affected the jury's judgment, given the overwhelming evidence against him and the substantial evidence impeaching Moliere and Holland's credibility.  See  McCleskey v. Kemp, 753 F. 2d 877, 884-85 (11th Cir. 1985) (en banc) (finding that where the witness' credibility has already been called into question by other "substantial impeachment evidence" and the substance of the witness' testimony is corroborated by other evidence, there is no reasonable likelihood that the undisclosed promise of leniency "would have affected the jury's assessment of [the witness'] credibility," even where "his testimony added weight to the prosecution's case" and "might well be regarded as important in certain respects").

**C.**     **Ground Two: Prosecutorial Misconduct**

Gamory also argues that the prosecutor committed misconduct by (a) violating his rights under Brady and Giglio and (b) noting during closing argument that Vaughn would not testify against Gamory.  [Doc. 320-1 at 37-42].  To support a prosecutorial misconduct claim, a defendant must show, among other things, that the prosecutor's actions

> prejudicially affect[ed] the substantial rights of the defendant.   A
> defendant's substantial rights are prejudicially affected when a reasonable
> probability arises that, but for the remarks, the outcome of the trial would

13

> have been different.  When the record contains sufficient independent evidence of guilt, any error is harmless.

United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) (citation omitted); see also Banks v. Dretke, 540 U.S. 668, 691 (2004) (citations and internal marks omitted) (holding that an essential element of a Brady prosecutorial misconduct claim is that "prejudice must have ensued" and that prejudice "exists when the suppressed evidence is 'material' for Brady purposes").  Because, as discussed in the previous section (II.B.), Gamory has not shown that the secret promises allegedly made to Moliere and Holland likely would have affected the jury's judgment, he has not shown prejudice regarding his claim that the prosecution mislead the jury into believing that no such promises were made.

Gamory could have raised on direct appeal his claim regarding the prosecution's comment during closing that Vaughn would not testify against Gamory, but he did not. A criminal defendant who fails to raise an issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent (1) a showing of cause for the default and actual prejudice or (2) a showing of actual innocence.  McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011), cert. denied, 133 S. Ct. 112 (2012).  "[T]o show cause for procedural default, [a movant] must show that some objective factor external

14

to the defense prevented [him] or his counsel from raising his claims on direct appeal . . ." or that the matter was not raised because of ineffective assistance of counsel. Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam) (footnote and citations omitted).  A movant may also establish cause for the procedural default if he can show "that his attorney's performance failed to meet the Strickland[6] standard for effective assistance of counsel." Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997) (citation and internal marks omitted); see also United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (holding that only a meritorious ineffective assistance of counsel claim may constitute cause).  If a movant shows cause, he must also show prejudice, i.e., that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece, 119 F.3d at 1467 (citation omitted).  To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." McKay, 657 F.3d at 1196 (first alteration in original) (footnote and citations omitted).

---

[6] Strickland v. Washington, 466 U.S. 668 (1984).

Here, Gamory does not allege that an objective factor external to the defense caused the default.  Additionally, Gamory fails to show cause based on counsel's alleged ineffectiveness because, as discussed in section II. E., Gamory's ineffective-assistance claims are not meritorious.  See Nyhuis, 211 F.3d at 1344.  Finally, Gamory presents no new evidence to meet the actual innocence exception.  Thus, this claim is procedurally barred.

**D.**     **Ground Three: Batson**

Gamory next contends that the government violated Batson by striking prospective juror 29 based on his ethnicity.  [Doc. 320-1 at 42-44].  Gamory admits that he raised this issue on direct appeal, arguing in his initial brief that the government's peremptory strike was based on race and in his reply brief that it was based on ethnicity.  [Id. at 42].  The Eleventh Circuit found that the government's stated reason for striking prospective juror 29–"because he was from the Virgin Islands, as was the defendant's father, and because the Virgin Islands seem to have liberal drug views"–was legitimate and not based on purposeful discrimination.  Gamory, 635 F.3d at 496 (footnote omitted).  In so holding, the Court noted that the government had also struck a Caucasion woman, who because "she was raised in

16

France . . . believed that the penalties for personal use of marijuana were harsh." <u>Id.</u>, n.18 (citation omitted).

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." <u>Nyhuis</u>, 211 F.3d at 1343 (citation omitted). This includes claims that movant has "merely re-characterized" because "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." <u>Id.</u> (citation omitted). Additionally, a claim that the Eleventh Circuit did not expressly reject is nevertheless "rejected by necessary implication when the holding stated or result reached is inconsistent with the argument." <u>United States v. Jordan</u>, 429 F.3d 1032, 1035 (11th Cir. 2005); <u>see</u> <u>also</u> <u>United States v. Carter</u>, No. 2:05cv1016-MEF, 2008 WL 652903, at *5 (M.D. Ala. Mar. 6, 2008) (finding claim that was raised on direct appeal was barred from collateral review where the Eleventh Circuit affirmed movant's convictions but did not expressly address the claim in its opinion).

Because this ground was raised and rejected on direct appeal, it is barred from collateral review. Gamory asserts that the Eleventh Circuit did not expressly address his "ethnicity" argument. [Doc. 330 at 14]. However, the undersigned finds that the Eleventh Circuit rejected this argument by necessary implication because Gamory's ethnicity argument is inconsistent with the Eleventh Circuit's finding that being from

17

the Virgin Islands was a legitimate reason to strike the prospective juror.  In any event,

Gamory cannot show that Virgin Islanders are a distinct ethnic group protected under

<u>Batson</u>.[7]  Therefore, Gamory is not entitled to collateral relief as to this ground.

**E.     Ground Four: Assistance of Counsel**

**1.     Legal Standard**

The standard for evaluating ineffective assistance of counsel claims is set forth

in <u>Strickland</u>.  <u>See</u> 466 U.S. at 687; <u>see</u> <u>also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 938 (11th

Cir. 2001) (applying <u>Strickland</u> to allegations of ineffective assistance of appellate

counsel).  The analysis is two-pronged.  However, a court need not address both

_____

[7] The Superior Court of the Virgin Islands has explained that:

> Geographically, the Virgin Islands is situated within the Caribbean Sea. Over the years, people from across the Caribbean region immigrated here in search of a better life.  Common histories, comparable struggles, and other corollary experiences around the region have imparted many traditions, values, and beliefs shared by all Caribbean peoples, including Virgin Islanders.  But not every Virgin Islander initially called the Caribbean home. Some trace their roots directly back to Europe.  Others relocated here from the mainland.  "The **diverse ethnicity of the Virgin Islands people** . . . includes Amerindian, African, European, and Caribbean/West Indian heritages. . . ."

<u>People v. Simmonds,</u> No. SX-05-CR-0000215, 2012 WL 2550958, at \*14 (V.I. Super. June 11, 2012) (emphasis added) (alterations in original) (footnotes and citations omitted).

AO 72A
(Rev.8/82)

prongs "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.  A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690.   A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate . . . .") (citation omitted); see also Smith v. Murray, 477 U.S. 527, 536 (1986) (citation and internal marks omitted) ("[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy."). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy.  Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden.").

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him.  "An error by counsel, even if professionally unreasonable,

19

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Strickland</u>, 466 U.S. at 691 (citation omitted).  In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>; <u>see also</u> <u>Eagle</u>, 279 F.3d at 943 (citation omitted) ("To determine whether the [unreasonable] failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim.").

### 2.    **Brady / Giglio**

Gamory asserts that his "counsel's successful impeachment of the Government's coconspirator witnesses were [sic] rendered ineffective due to the Government's <u>Brady</u> / <u>Giglio</u> violation."  [Doc. 330 at 18]; <u>see also</u> [Doc. 320-1 at 47, 49].  Gamory also contends that counsel should have preserved the issue for appeal by raising it in a motion for a new trial. [Doc. 320-1 at 50-51].  As discussed at length in section II. B., Gamory's <u>Brady</u> / <u>Giglio</u> claim lacks merit.  Accordingly, Gamory cannot show deficient performance by counsel or prejudice for failing to raise, in a motion for new trial or on appeal, this meritless claim.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689-90, 694; <u>Eagle</u>, 279 F.3d at 943 (citation omitted).

20

3.   **Prosecutorial Misconduct**

Gamory argues that counsel was ineffective for failing to object when the prosecutor inferred, during closing argument, "that a non-testifying codefendant and coconspirator[, i.e., Vaughn,] has refused to cooperate in order to benefit [Gamory]." [Doc. 320-1 at 47, 50]. Gamory further maintains that counsel should have raised this claim on direct appeal.  [Id. at 48].

During closing argument, the government made the following statement:

> And the other thing is, you know, talking about the deals and whatever, it struck me as I listened to the evidence that, you know, Edgar Gamory's really no different than his homeboys who came in here and testified against him because, you know what he is doing, **he is pointing the finger everywhere else around, especially at Vaughn Greene, the one person who wouldn't cooperate against him, so that he can get a benefit**.  He is no different than the rest so that he can get a benefit.  That benefit is he is hoping that he is going to fool you into believing that he is not a drug dealer.

[Doc. 252 at 128 (emphasis added)].  Even assuming that this comment was improper, it did not amount to prosecutorial misconduct in light of the overwhelming evidence of Gamory's guilt noted by the Eleventh Circuit on direct appeal and discussed in section II. B.  See Lopez, 590 F.3d at 1256 (In order to establish a prosecutorial misconduct claim, defendant must show, among other things, that his substantial rights were affected.); United States v. John, 734 F.2d 657, 666 (11th Cir. 1984) (finding that

21

in light of the "overwhelming evidence" of defendant's guilt, a "single straying by the prosecutor from the appropriate evidence" did not affect defendant's "substantial rights.").  Accordingly, counsel also cannot be deemed ineffective for failing to raise this meritless claim.  See Strickland, 466 U.S. at 689-90, 694; Eagle, 279 F.3d at 943 (citation omitted).

**4.   Batson**

Gamory contends that counsel was ineffective for failing to raise during jury selection and in his initial appellate brief an ethnicity-based Batson challenge to prospective juror 29. [Doc. 320-1 at 47-52].  Counsel raised this argument in the reply brief on appeal, and the Eleventh Circuit rejected it by necessary implication.  (See discussion of this ground in section II. D.).  Because the Eleventh Circuit found that the government's stated reason for striking prospective juror 29–that he was from the Virgin Islands where there are liberal views on drugs–was legitimate and not based on purposeful discrimination, Gamory cannot show that counsel's failure to argue that Virgin Islanders are a distinct ethnic group protected under Batson amounted to

22

deficient performance.[8]  See Strickland, 466 U.S. at 689-90, 694; Eagle, 279 F.3d at 943 (citation omitted).

## F.   Ground Five: Cumulative Error

Finally, Gamory argues that the cumulative effect of the harmless error identified by the Eleventh Circuit on appeal, see, e.g., Gamory, 635 F.3d at 493-95 (dealing with the admission of a rap video), and the claimed errors he raises in the instant motion warrants § 2255 relief,  [Doc. 320-1 at 52-55].  "The cumulative error doctrine 'provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.'"  United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (citations omitted).  In addressing cumulative error, a court must first examine each claim individually and then examine any error in the aggregate and the trial as a whole to determine whether a defendant was afforded a fundamentally fair trial.  United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).  "'The total effect of the errors on the trial will depend, among other things, on the nature and number of the errors committed; their interrelationship, if any, and combined effect;

---

[8] Additionally, as noted in section II. D. and footnote 7, Virgin Islanders are ethnically diverse and thus, cannot be considered a distinct ethnic group.

23

. . . the strength of the government's case[;] and the length of trial.'" <u>United States v.</u> <u>House</u>, 684 F.3d 1173, 1197 (11th Cir. 2012) (alterations in original) (citation omitted), <u>cert. denied</u>, 133 S.Ct. 1633 (Mar. 25, 2013).   Having examined each individual claim and thoroughly reviewed the record, including the Eleventh's Circuit's opinion on direct appeal, the undersigned finds that the aggregate effect of the alleged errors complained of by Gamory, most of which are completely without merit, did not render his seven-day trial fundamentally unfair.  Therefore, ground five fails.

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for

24

that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citation and internal marks omitted).

Based on the foregoing discussion of Gamory's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.[9]

## IV.  MOTION FOR A NEW TRIAL

Gamory argues that he is entitled to a new trial based on the newly discovered evidence that supports his Brady / Giglio claim. [Doc. 320-1 at 58-59]. However, a "motion for a new trial grounded on newly discovered evidence must be filed within

---

[9] Gamory argues that the COA requirement violates a defendant's due process right to a direct appeal as applied to the defendant's claims of ineffective assistance of counsel, which may only be raised on collateral review. [Doc. 320-1 at 67-70]. Thus, Gamory contends, he should be allowed "to appeal his claims of ineffective assistance of counsel as of right." [Id. at 70]. It is an interesting argument for which there is no law in support. "There is no constitutional right to appeal. The right to appeal is purely statutory." United States v. Bushert, 997 F.2d 1343, 1347 (11th Cir. 1993) (citations omitted). Gamory will have an opportunity to file objections to the recommendations contained herein, including the recommendation to deny him a COA. Should the District Judge deny Gamory's request for a COA, he may then petition the Eleventh Circuit for a COA. Accordingly, the Court finds that the COA requirement as applied to Gamory's ineffective assistance of counsel claims does not violate his due process rights.

AO 72A
(Rev.8/82)

3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Gamory's motion is untimely because he submitted it on November 30, 2012, [Doc. 320-1 at 73], more than three years after he was found guilty on April 21, 2009, [Doc. 175]. Gamory asserts that he is entitled to equitable tolling of this deadline, "at least until the time the Government's promises were revealed, November 8, 2011." [Doc. 330 at 24]; see also [Doc. 320-1 at 55-58]. Gamory discovered this evidence roughly five months before Rule 33(b)(1)'s three-year deadline expired on April 21, 2012, and he provides no explanation as to why he did not file his motion for a new trial until a year after this discovery. See generally [id.]. Because Gamory has not shown that he acted diligently, he is not entitled to equitable tolling. See United States v. Ramsey, 444 F. App'x 356, 358 (11th Cir. 2011) (per curiam) (unpublished) (emphasis added) (citation omitted) ("Assuming arguendo that equitable tolling applies to the time limitations under Rule 33, it is a remedy that must be used sparingly [and it is only] warranted 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and **unavoidable even with diligence**.'"). In any event, as discussed in section II. B., Gamory's Brady / Giglio claim lacks merit. Thus, Gamory is not entitled to a new trial.

26

## V.  CONCLUSION

For the foregoing reasons, Gamory's motion to expand the record is **GRANTED**, and **IT IS HEREBY RECOMMENDED** that Gamory's motions to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, for a new trial, to compel discovery, for an evidentiary hearing, and for a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the Gamory's motions, [Doc. 320], to the Magistrate Judge.

**SO ORDERED and RECOMMENDED**, this 15th day of  July, 2013.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

27